UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:23-cr-00035-SEB-MG |
| | ) | |
| JEFFREY GROVES, | ) | -01 |
| | ) | |
| Defendant. | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Now before the Court is Defendant's Motion to Suppress, dkt. 55, filed on September 14, 2023. Defendant Jeffrey Groves ("Mr. Groves") is charged in the Indictment with one count of Conspiracy to Possess with Intent to Distribute and/or Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, and one count of Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1). Mr. Groves seeks to suppress all evidence obtained from his warrantless arrest and a subsequent search conducted on January 13, 2023. Mr. Groves has requested an evidentiary hearing on his motion, which the Government has opposed. As will be explained in greater detail below, no hearing is necessary because there are no material factual disputes between the parties. The Motion is fully briefed and, based on the applicable principles of law explicated below, Defendant's Motion to Suppress is hereby **DENIED**.

## FACTS

On January 13, 2023, while conducting a routine parcel investigation at a local shipping company, Indianapolis Metropolitan Police Department ("IMPD") Detective Keith

Hartman ("Detective Hartman") intercepted a parcel suspected of containing controlled substances (hereinafter "parcel #1"). After a K9 sniff search confirmed the likely presence of illegal drugs, Detective Hartman applied for and was granted a search warrant authorizing his opening of parcel #1, wherein he found approximately 44.5 pounds of methamphetamine and an Apple AirTag.

Thereafter, officers began surveilling the recipient address, an Indianapolis residence on Parkview Avenue, as printed on parcel #1. While awaiting parcel #1's arrival, officers observed a delivery driver deposit a different—but almost identical—parcel (hereinafter "parcel #2") on the front porch at the Parkview address. Detective Hartman phoned the shipping company to confirm that parcel #2 reflected the same shipper, recipient name and address, approximate size and weight, and delivery date as parcel #1. From this information, Detective Hartman deduced that parcel #2 also likely contained illegal drugs.

Fifteen minutes thereafter, a woman, later identified as Zakahia Roney ("Ms. Roney"), arrived in a car at the Parkview residence, retrieved parcel #2 from the front porch, walked to the rear passenger side of her vehicle, and placed parcel #2 inside. Using a set of keys she carried with her, she entered the Parkview residence and stayed inside for approximately five minutes, after which she returned to her car and departed. When she drove away, she was the sole occupant of the vehicle.

The surveilling officers followed Ms. Roney's vehicle to a second location on Brookside Parkway South Drive, wherefrom a man, subsequently identified as Mr. Groves, exited and joined Ms. Roney in her vehicle. As the officers continued to follow Ms. Roney, they observed as she committed two traffic infractions and also determined that her driver's

license had been suspended for being a Habitual Traffic Violator. The officers initiated a traffic stop, but Ms. Roney "continued to slow roll and did not stop with the lights activated on the police vehicle." Report of Investigation, dkt. 64-3 at 4. Following an unsuccessful vehicular pursuit by the police officers, Ms. Roney stopped and exited her car and fled afoot on a brief attempt to escape until three officers apprehended her.

Mr. Groves, meanwhile, remained seated in the vehicle. Other on-scene officers apprehended him and, "upon arrest," seized two cell phones and $1,100.00 in U.S. currency from his jacket pockets. Probable Cause Aff., dkt. 56-1 at 2. A K9 alerted officers to the odor of a controlled substance inside the vehicle. Later, officers obtained a warrant authorizing them to open parcel #2, wherein they discovered 44.5 pounds of methamphetamine and an Apple AirTag.

Law enforcement officers then transported Ms. Roney and Mr. Groves to the police station for questioning. Once inside their respective interview rooms, each declined to speak with detectives. Meanwhile, Mr. Groves's cell phones were placed in the observation room, where a detective observed a "clearly visible" text message coming in on one of the phones. Dkt. 64-3 at 5. This communication read, "Hay man if you can lmk something they are about to go back home they been here since 11 bro just lmk something please." Electr. Search Warrant, dkt. 64-4 at 10.

IMPD eventually discovered that Mr. Groves was wearing an ankle monitor and serving a sentence of home detention out of Shelby County, Indiana. According to the Probable Cause Affidavit, law enforcement determined that Mr. Groves was in violation of various conditions set out in his Home Detention Contract (the "Contract") (which

conditions are not otherwise relevant to this motion). In July 2022, Mr. Groves had entered a guilty plea and was sentenced to home detention and monitoring. Pursuant to this plea, the Shelby County Superior Court issued a Home Detention Order (the "Order"), which the Contract (filed six days later) incorporated by reference. According to the Order, Mr. Groves had expressly agreed to the following:

> You shall submit to warrantless and/or suspicionless searches of your person, your residence, your motor vehicle, or your property by probation, law enforcement, or community corrections personnel at such times and places in the sole discretion of such personnel.

Home Det. Order, dkt. 61-1 at 2.[1]

On March 8, 2023, Mr. Groves was charged by Federal Indictment with Conspiracy to Possess with Intent to Distribute and/or Distribute Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846 and with Possession with Intent to Distribute Controlled Substances in violation of 21 U.S.C. § 841(a)(1). On September 14, 2023, Mr. Groves moved to suppress all evidence resulting from his arrest, including two cell phones and $1,100 in U.S. currency. His motion is now briefed, albeit without the benefit of a reply brief, and ripe for ruling.

---

[1] Though the Contract incorporates the Order by reference (e.g, "[y]ou must abide by all court orders"), the Probable Cause Affidavit makes no mention of the Order or any of its specific directives, including the stipulation recited above. The Contract itself contains no similar language. Thus, because the Probable Cause Affidavit cites only to the Contract—not to the Order—we assume (and the Government has not argued otherwise) that this stipulation was unknown or at least deemed irrelevant to law enforcement for purposes of establishing probable cause.

## DISCUSSION

Mr. Groves contends that law enforcement lacked particularized probable cause for any involvement in criminal activity on his part, thus, making his arrest an illegal seizure under the Fourth Amendment to the United States Constitution.[2] Because his arrest violated his constitutional rights, he argues, all evidence derived therefrom must be suppressed. The Government responds that, under the totality of the circumstances, there was probable cause for Mr. Groves's arrest and further that, as a home detainee, Mr. Groves had no legitimate expectation of privacy in his cell phones. Accordingly, the Government maintains that the search and his seizure were reasonable under the Fourth Amendment and not violative of Mr. Groves's constitutional rights. The Government further argues that, even if Mr. Groves's arrest lacked probable cause, officers would inevitably have discovered his cell phones and cash.

**I.    Probable Cause**

Probable cause exists "when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense." *United States v. Sawyer*, 224 F.3d 675, 678–79 (7th Cir. 2000) (citations omitted). While probable cause does not require "evidence sufficient to support a conviction," it nonetheless demands that "the totality of the circumstances, viewed in a commonsense manner, reveals a probability or substantial chance of criminal activity on the suspect's

---

[2] Mr. Groves does not challenge, nor do we find, that the officers' initial traffic stop was unlawful under *Terry v. Ohio*, 392 U.S. 1 (1968).

part." *Id.* at 679 (citing *United States v. Levy*, 990 F.2d 971, 973 (7th Cir. 1993)). Under this standard, such probable cause must be "particularized to that person" and "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another . . . where the person may be." *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979).

Mr. Groves argues that the officers lacked probable cause to arrest him because, at the time of his arrest, all indications of criminal activity pointed only to Ms. Roney, and Mr. Groves's presence as a passenger in her vehicle was insufficient to confer probable cause. Mr. Groves primarily relies on *United States v. Di Re*, where the Court held that a person does not "lose[ ] immunities from search of his person" simply "by mere presence in a suspected car." 332 U.S. 581, 587 (1947). In that case, police officers, with the benefit of an informant's tip, approached an occupied vehicle suspected as the site of a counterfeit ration coupon transaction. Though the informant identified only the driver, police also arrested the vehicle's passenger, who later challenged the sufficiency of the grounds for his arrest.

In holding the passenger's arrest unlawful, the Court observed that "[p]resumptions of guilt are not lightly to be indulged from mere meetings," particularly when nothing "visibly criminal" suggested the passenger's participation. *Id.* at 593. Reasoning further, the Court noted that even if the passenger "had witnessed the passing of papers from hand to hand, it would not follow that he knew they were ration coupons, and if he saw that they were ration coupons, it would not follow that he would know them to be counterfeit." *Id.* Whatever suspicion the passenger's presence raised, the officers had no reasonable grounds

to suspect the passenger, because the informant identified only the driver as a "guilty" party. *Id.* at 594.

By contrast, the principles applicable here establish that when one occupant of a vehicle commits an "unmistakably illegal" act and makes no effort to conceal such act from another occupant, an officer may reasonably infer that the other occupant was equally engaged in a common enterprise. *United States v. Gary*, 790 F.3d 704, 707 (7th Cir. 2015). Indeed, "car passengers . . . will often be engaged in a common enterprise with the driver and have the same interest in concealing the fruits or the evidence of their wrongdoing." *Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (quoting *Wyoming v. Houghton*, 526 U.S. 295, 304–05 (1999)) (internal quotation marks omitted). In *Pringle*, for example, the Court held that it was reasonable to suspect that every vehicle occupant "kn[ew] of, and exercised dominion and control over" drugs found behind a back-seat armrest. *Id.* In that case, an officer conducted a traffic stop of a car with three occupants and, as the driver retrieved his registration from the glove compartment, noticed several rolls of cash in plain view. With the driver's consent, the officer searched the vehicle and found cocaine. Because each occupant denied ownership of both the money and the cocaine, the Court concluded that it was reasonable to infer that "any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id.*

We find the facts of the case before us more closely analogous to *Di Re* than to *Pringle*. Much like in *Di Re*, the incriminating evidence specific to Mr. Groves and known to police at the time of his arrest was limited to his presence in the car as Ms. Roney's passenger. While no informant aided law enforcement by affirmatively identifying either

party as the sole person of interest, the suspicious facts overwhelmingly pointed to Ms. Roney: she alone retrieved parcel #2 from the Parkview residence and placed it in the back passenger seat; only she had an apparent connection to the Parkview residence (where parcels #1 and #2 were both addressed) by way of the keys she used to enter it; she had evaded police efforts to conduct a traffic stop; and only she fled from apprehension.

Mr. Groves was not present when Ms. Roney collected parcel #2, had no apparent connection to the Parkview residence, and made no independent effort to flee police. Insofar as parcel #2 was, as the Government states, situated closer to Mr. Groves than to Ms. Roney, there is no evidence that Mr. Groves was necessarily aware of parcel #2's presence or its illegal contents. Like the counterfeit coupons in *Di Re*, parcel #2's illegality was not readily apparent. On these facts, we cannot conclude that Mr. Groves knew of or exercised dominion and control over parcel #2 and its contents. Therefore, where no facts reveal participation in "unmistakably illegal" conduct, an officer could not have reasonably inferred that Mr. Groves was "equally engaged in a common enterprise" with Ms. Roney. *Gary*, 790 F.3d at 707.

II.   **Waiver of Fourth Amendment Rights**

Mr. Groves also contests the search and seizure of his cell phones upon his arrest, but the Government argues that Mr. Groves waived his privacy interests when he agreed to "warrantless and/or suspicionless searches" in the terms of his home detention. Courts determine the reasonableness of a search "by looking at the totality of the circumstances" and evaluating, "on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate

governmental interests." *United States v. Beechler*, 68 F.4th 358, 365 (7th Cir. 2023) (quoting *United States v. Knights*, 534 U.S. 112, 118–19 (2001)) (internal quotation marks omitted).

When a person has previously been drawn into the criminal justice system, the reasonableness inquiry regards several factors as "salient," like: (a) the level of punishment or supervision to which the individual has been subjected; (b) whether the individual has agreed to waive some or all Fourth Amendment rights in exchange for more freedom within the correctional system; (c) and expectations of privacy formed pursuant to state law. *Id.* (citing *United States v. Wood*, 16 F.4th 529, 535–37 (7th Cir. 2021)). From the government's perspective, courts weigh the interest in protecting the public, reducing recidivism, and promoting reintegration into society. *Id.* (citing *Samson v. California*, 547 U.S. 843, 849–50 (2006)).

That "a person [is] serving a sentence of home confinement informs both sides of the balance . . . ." *Id.* But when the terms of home confinement explicitly stipulate that an individual is subject to warrantless and/or suspicionless searches, courts in the Seventh Circuit generally uphold those waivers. *E.g.*, *Beechler*, 68 F.4th at 365; *Wood*, 16 F.4th at 536. This general rule, however, assumes law enforcement's knowledge of such conditions, for officers cannot base a search on facts unknown to them. *See, e.g., United States v. Williams*, 702 F.Supp.2d 1021, 1030 (N.D. Ill. 2010); *Taylor v. Womack,* No. 15-CV-3113, 2017 WL 600080, at *2–3 (C.D. Ill. Feb. 14, 2017); *United States v. Wicks*, No. 20-CR-143-JPS-JPS, 2021 WL 4786307, at *2 (E.D. Wisc. Oct. 13, 2021); *see also Samson*, 547 U.S. at 856 n.5 (noting that, under California law, "an officer would not act reasonably in

conducting a suspicionless search absent knowledge that the person stopped for the search is a parolee").

In our case, the Government attempts to validate its unlawful arrest and subsequent search by pointing to the conditions of Mr. Groves's home detention. Although Mr. Groves had, by way of the Home Detention Order, exposed himself to "warrantless and/or suspicionless searches," there is no evidence that the officers knew of his status or this specific information before detaining him. Rather, officers apparently did not discover Mr. Groves's ankle monitoring device until after he had been arrested and transported to the police station. The Probable Cause Affidavit makes no mention of Mr. Groves's waiver, despite enumerating various conditions of which Mr. Groves was in violation. To conduct a warrantless or suspicionless search pursuant to the terms of Mr. Groves's home detention, the Government must show that the arresting officers knew not only that Mr. Groves was serving a term of home detention but also that the conditions of his detention subjected him to such searches. *See Williams*, 702 F.Supp.2d at 1030. The Government has failed to do this. Thus, we reject the Government's remarkable proposition that law enforcement can reasonably—or, more importantly, constitutionally—base a search on facts unknown to it.

**III.   Inevitable Discovery**

The Government avers that, regardless of the constitutionality of Mr. Groves's arrest, law enforcement would inevitably have discovered the challenged evidence. Typically, the fruit of the poisonous tree doctrine requires suppression of evidence obtained directly or indirectly from an illegal search. *Wong Sun v. United States*, 371 U.S. 471, 484–86 (1963). If, however, "the prosecution can establish by a preponderance of the evidence

that the challenged evidence ultimately would have been discovered through lawful means without regard to the constitutional error, then the evidence is not subject to suppression." *United States v. Eymann*, 962 F.3d 273, 287–88 (7th Cir. 2020) (citing *United States v. Jones*, 72 F.3d 1324, 1330 (7th Cir. 1995)). To demonstrate the inevitable discovery of challenged evidence, the government must show (1) that "it had, or would have obtained, an independent, legal justification for conducting a search that would have led to the discovery of the evidence," and (2) that it "would have conducted a lawful search absent the challenged conduct." *Id.* at 288 (quoting *United States v. Marrocco*, 578 F.3d 627, 637–38 (7th Cir. 2009)) (internal quotation marks omitted).

Based on the facts before us, we agree with the Government that the inevitable discovery doctrine ultimately saves the evidence from suppression. The sequence of events—from Detective Hartman's initial discovery of parcel #1's contents to Ms. Roney's apprehension—would have led law enforcement to an independent, legal justification for searching Mr. Groves. Indeed, as the Government explains, Mr. Groves would not have been free to leave the scene of an attempted flight without officers searching his name in law enforcement databases and thereby discovering that he was in violation of his home detention. Upon this discovery coupled with their knowledge of parcel #2, officers could have permissibly searched and seized Mr. Groves's person, inevitably leading to the discovery of his cell phones and cash.

Moreover, as the Government adds, incriminating text communications from Mr. Groves's phone were recovered through the independent, lawful search and seizure of

phones belonging to Mr. Groves's alleged co-conspirators. That evidence also would have provided probable cause for a search warrant of Mr. Groves's cell phones.

Under these circumstances, a preponderance of the evidence demonstrates that law enforcement would have searched Mr. Groves and inevitably discovered his cell phones and cash, even if not for the unlawful arrest. Accordingly, the evidence of Mr. Groves's cell phones and cash need not be suppressed, and his motion to suppress is denied.

### IV. Evidentiary Hearing

District courts are required to hold an evidentiary hearing when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion. *United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011). A defendant seeking an evidentiary hearing must make a prima facie showing of illegality by presenting definite, detailed, and nonconjectural facts that justify relief. *United States v. Randle*, 966 F.2d 1209, 1212 (7th Cir. 1992) (quotations and citations omitted). The defendant also "bears the burden of both identifying a definite disputed factual issue and demonstrating its materiality." *Curlin*, 638 F.3d at 564 (citing *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007)).

Though Mr. Groves requested a hearing, he has identified no disputed factual issues nor demonstrated their materiality. Accordingly, we deny his request for an evidentiary hearing.

## CONCLUSION

For these reasons, Defendant's Motion to Suppress, dkt. 55, is **DENIED**.

IT IS SO ORDERED.

Date:  11/13/2023

*Sarah Evans Barker*
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Patrick Gibson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
patrick.gibson@usdoj.gov

Maxwell Bryant Wiley
BALDWIN PERRY & KAMISH, P.C.
max@criminaldefenseteam.com